**S. A. ALSUP, Plaintiff,**

v.

**Roy MAYHALL, Individually and as Chairman of the Democratic Executive Committee of the State of Alabama, Bettye Frink, Individually and as Secretary of the State of Alabama, and MacDonald Gallion, Individually and as Attorney General of the State of Alabama, Defendants.**

**Civ. A. No. 2822.**

United States District Court
S. D. Alabama, S. D.

Aug. 22, 1962.

M. A. Marsal, Mobile, Ala., for plaintiff.

Gordon Madison, Asst. Atty. Gen., Montgomery, Ala., for Bettye Frink and MacDonald Gallion.

Frank J. Mizell, Jr., Montgomery, Ala., for Roy Mayhall.

Before RIVES, Circuit Judge, THOMAS and JOHNSON, District Judges.

PER CURIAM.

S. A. Alsup, a resident citizen of Mobile County, Alabama, files a petition seeking a declaratory judgment and injunctive relief against the defendants, Roy Mayhall, as Chairman of the Democratic Executive Committee for the State of Alabama, Bettye Frink, as Secretary

of State for the State of Alabama, and MacDonald Gallion, as Attorney General for the State of Alabama.

To the petition, each of the defendants moves to dismiss. These several motions to dismiss are based, generally, upon the grounds: first, that the Court lacks jurisdiction; and second, that the petition fails to allege any facts that necessitate or justify a declaratory judgment or injunction.

The Legislature of the State of Alabama in "Act 154" (Senate Bill 224) enacted into law in 1961 what is commonly known and referred to as the "9–8 Bill," regulating elections held for the purpose of nominating candidates for and election of representatives in Congress. This bill was and is designed to cope with the fact that the State of Alabama, effective January 1963, will have its congressional representation reduced from nine to eight members by reason of the allocation of those representatives based upon the 1960 federal census. The Legislature of the State of Alabama, being unable to agree upon any plan redistricting the State from nine to eight districts, sought to cope temporarily with the problem in "Act 154" (Senate Bill 224) as follows:

"Section 1. If any political party holds primary elections for the purpose of nominating candidates for election as representatives in the Congress of the United States from Alabama, in 1962, or at any time thereafter until the state is redivided into congressional districts, such elections shall only be held as provided in this Act.

"Section 2. On the first Tuesday in May 1962, and every two years thereafter, until the state is redivided into congressional districts, a candidate for election as representative in Congress may be named by vote of the qualified electors of each of the nine congressional districts described in Code of Alabama 1940, Title 17, Section 425. The name of the candidate receiving a majority of the votes in the district shall be certified by the chairman of the state executive committee of the party holding the primary to the probate judges of the several counties of the state, who shall cause the names of such candidates as so certified to be placed upon paper ballots to be used in a statewide runoff primary election, which shall be held on the fourth Tuesday next following the date of the first primary. Only paper ballots shall be used in the primary election held on the fourth Tuesday next following the date of the first primary, in the election for the purpose of nominating candidates for election as Representatives in the Congress of the United States from Alabama under this Act, and the use of voting machines for such purpose is hereby prohibited, provided however that nothing in this Act shall prohibit the use of voting machines for elections of candidates for other offices held in said primary. The names of the eight candidates receiving the highest number of votes cast in the state-wide runoff primary shall be certified by said state chairman to the secretary of state as the party's nominees for election to Congress at the ensuing general election. Every voter who votes in the statewide runoff primary must vote for eight and only eight of the candidates whose names appear on the ballots. If no candidate receives a majority of all the votes cast in the first primary, then there shall be held a district runoff primary election on the second Tuesday next following the first primary; and the chairman of the state executive committee shall certify to the probate judges of the several counties of the several districts, the names of the two candidates of his party to receive the highest number of votes in the first primary election. The probate judges of the several counties shall

have prepared and printed all election supplies and ballots to be voted in the district runoff primary election and also in the statewide primary election.

"Section 3. At the general election in November 1962, and every two years thereafter until the state is redivided into congressional districts, the representatives in Congress shall be elected at large by the qualified electors of the whole state, provided that every elector who votes in such election must vote for eight and only eight candidates for representatives in Congress.

"Section 4. Except as otherwise provided in this Act, primaries held for the purpose of nominating candidates for election as representatives in Congress shall be conducted in the same way and according to the same laws as prescribed for conducting other primaries.

"Section 5. All laws or parts of laws which conflict with this Act are repealed.

"Section 6. This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law. However, if the Congress, at the present session or the next session, authorizes nine (9) members of Congress for Alabama, then this Act shall have no force or effect and the present nine (9) congressional districts in Alabama shall remain as they are now described in Section 425, Title 17, Code of 1940." [1]

Petitioner claims that the method of selecting congressional representatives prescribed by "Act 154" (Senate Bill 224) violates his rights as a citizen of the United States and particularly violates his rights as guaranteed by the Fifth and Fifteenth Amendments to the Constitution of the United States. The Act quite obviously does not violate either the Fifth or Fifteenth Amendments to the Constitution. The Fifth Amendment is a prohibitory amendment directed toward the federal government and not the states. Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288. Insofar as the Fifteenth Amendment is concerned, there is no allegation and no showing that the petitioner is a member of the Negro race or any other minority racial group. As a matter of fact, this Court knows that the contrary is true; therefore, the Fifteenth Amendment is not applicable in this instance. Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152. The pleadings (particularly the amendment to the complaint) and arguments in this case reflect that the real basis for the complaint is that there has been an alleged unequal or discriminatory treatment accorded the petitioner in violation of the Fourteenth Amendment to the Constitution of the United States. Plaintiff contends among other things (1) that the Alabama act operates to deprive plaintiff and other residents of one of the State's former nine congressional districts of representation in Congress; (2) that requiring plaintiff and other voters to vote for eight candidates, in order that the vote be valid, is a restraint on the right to a free election;

1. Historically, pursuant to the provisions of "Act 154" (Senate Bill 224), the first primary election was held in May 1962, in which election each of Alabama's nine incumbent (Democratic) Congressmen was renominated in and by the same electoral district which placed him in office in 1960. In the statewide runoff primary, held in June 1962, the nine candidates who survived the first primary, being one from each of the nine former congressional districts, ran, as provided in "Act 154," in the state at large; and the voters were required to vote for eight candidates or not have their vote counted. As a result of this second primary, the nominee from the former first congressional district, wherein petitioner resides, was eliminated as an eligible candidate for the general election to be held in the fall.

and (3) that the Democratic primary in Alabama being equal to an election, the method prescribed for holding the primary violates the federal statute providing for election of representatives from the state at large. (2 U.S.C.A. § 2a(c) (5))

■ There is no doubt that discriminatory and unequal treatment resulting from the passage of state acts which affect one's vote is actionable in the federal courts under the Fourteenth Amendment. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. However, for petitioner to present a claim for which relief should be or may be granted, it is necessary to allege some facts showing arbitrariness in the complained of State action. For instance, in Wesberry v. Vandiver, N.D.Ga., 1962, 206 F.Supp. 276, the three-judge district court stated:

> "We would apply the test for invidious discrimination by considering all relevant factors, including a determination of rationality of state policy behind the statutory system, arbitrariness, whether the system has a historical basis in our political institutions, together with the presence or absence of political remedy. * * * The test is to be made on the sum of all of these factors and the asserted violation must be clear for we are dealing with the constitutionally based relationship between federal and state governments."

Applying this test to this case, it is very readily seen that petitioner Alsup shows no discrimination, no unequal treatment and no arbitrariness in the State's action. If Alsup is (or was) entitled to vote in the primary, then he has an equal voice with the other electors in the district.[2] If he is (or was) entitled to

vote in the runoff primary, then he has an equal voice with other electors in the State. In the election to be held in this State in November 1962, Alsup has a right to vote on the same basis as other electors in the State. The provision that every elector who votes in such election must vote for eight and only eight candidates for representatives in Congress binds every elector in the State.

Not only does Alsup fail to show arbitrariness on the part of the Alabama Legislature in enacting "Act 154" (Senate Bill 224), but such a system as the Legislature for the State of Alabama is following in this instance has been stated to be the manner in which elections are to be held when there has been a reduction in the number of congressional seats within a state. Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795. That Court, in holding the Act of the Minnesota Legislature to be void, stated as follows:

> "[I]n such a case [decrease in number of representatives], unless and until new districts are created, all representatives allotted to the State must be elected by the State at large. That would be required, in the absence of a redistricting act, in order to afford the representation to which the State is constitutionally entitled * * *."

Accord, Carroll v. Becker, 285 U.S. 380, 52 S.Ct. 402, 76 L.Ed. 807 (1932); Koenig v. Flynn, 285 U.S. 375, 52 S.Ct. 403, 76 L.Ed. 805 (1932).

Such action as the Alabama Legislature is following in this State by "Act 154" (Senate Bill 224) seems to this Court to be in strict accord with that portion of Title 2 U.S.C.A. § 2a(c) (5), providing:

> "(5) if there is a decrease in the number of Representatives and the

---

2. He does not allege that he was denied the right to vote in either of the two primaries held in Alabama this year wherein the eight Democratic candidates were selected. As a matter of fact, he

alleges specifically that he is a Democrat and, by inference, thereby alleges that he had the opportunity to participate in the Democratic primaries.

number of districts in such State exceeds such decreased number of Representatives, they shall be elected from the State at large."

In enacting "Act 154" (Senate Bill 224), the Legislature of the State of Alabama has merely enacted a law which is supplementary to the federal statutory requirement. The State Act controls and regulates the manner in which the *election* is to be carried out. Such authority is vested in the states by Article I, Section 4, of the Constitution of the United States. The argument that *nomination* by district in the State of Alabama is tantamount to election by district may, as a politically historical fact, have some substance. However, it is completely without legal substance. The nominating process was completed by statewide vote. There is no *election* as such until November 1962. The election to be held in the State of Alabama, as proposed by "Act 154" (Senate Bill 224) is from the State at large and strictly in accord with the requirements of the law.

This Court concludes, therefore, that the petitioner Alsup has stated no claim upon which relief may be granted, and the separate motions of the defendants are due to be granted.

In accordance with the foregoing, it is the ORDER, JUDGMENT and DECREE of this Court:

(1) That the motions seeking to have this Court dismiss this action upon the ground that the complaint fails to state a claim upon which relief may be granted, be and each is hereby granted.

(2) That the petition of Alsup for declaratory judgment and injunctive relief be and the same is hereby dismissed; and

(3) That the costs incurred in this case be and the same are hereby taxed against the plaintiff Alsup, for which execution may issue.